UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20cv213-GCM

| RONNIE M. ABERNATHY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II. Standard of Review

This Court's review of the Commissioner's determination is limited to evaluating whether the findings are supported by substantial evidence and whether the correct law was applied. *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). A reviewing court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," this Court will defer to the Commissioner's decision. *Id.* (internal quotation marks omitted). Thus, the only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## III. Discussion

### A. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The claimant bears the burden of production and proof during the first four steps of the inquiry. Thereafter, the burden shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

    **C.**    **The Administrative Decision**

The ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since October 15, 2014, the alleged onset date. (Tr. 22). At the second step, the ALJ concluded that Plaintiff suffered from the following medically determinable severe impairments: obesity, complex partial refractory epilepsy, status post-sub-acute stroke, headaches, hypertension, degenerative disc disease, a partially torn left rotator cuff, an anxiety disorder, and a depression disorder. (Tr. 23). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.R.F. 404, Subpart P, Appendix 1. (Tr. 25).

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and made the following finding:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can climb ramps and stairs occasionally. The claimant can never climb ladders, ropes, scaffolds. The

claimant can balance, stoop, kneel, crouch, and crawl occasionally. The claimant is limited to frequent handling and fingering. The claimant must avoid concentrated exposure to unprotected heights and moving mechanical parts. The claimant should not operate a motor vehicle or any heavy or motorized equipment. The claimant is limited to simple work-related instructions and directions. The claimant is limited to simple, routine tasks, but not at a production rate pace, e.g., assembly line work. The claimant is capable of sustaining concentration and pace for two-hour segments during a standard eight-hour workday. The claimant is limited to occasional interaction with supervisors, coworkers, and the public. Interaction with the public is further limited to non-transactional. The claimant is limited to routine changes in an unskilled work setting.

(Tr. 27).

In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and Social Security Ruling ("SSR") 16-3p. (Tr. 27-8). After consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he further found that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 29).

### D. Discussion

Plaintiff has made the following assignments of error: (1) the ALJ failed to evaluate the entirety of the medical evidence in evaluating his functional limitations, and (2) the ALJ erred in relying on the testimony of the vocational expert to find that Plaintiff could perform other jobs existing in significant numbers in the national economy.

The Court will first address Plaintiff's second assignment of error. Based on vocational testimony, the ALJ found that Abernathy could perform work as a paster, stuffer, or sorter. Plaintiff argues that all these occupations are obsolete. A decision finding a claimant not disabled based on

4

his ability to perform work that no longer exists in the national economy is not supported by substantial evidence. *See Herrman v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014) ("If the only jobs the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist) the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs"). The Dictionary of Occupational Titles ("DOT"), was last updated in 1991. While a vocational expert may base his testimony on job descriptions in the DOT, "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Cunningham v. Astrue*, 360 F. App'x. 606, 615 (6th Cir. 2010).

The first job the ALJ identifies is that of a "paster." The paster position requires a worker to "[t]ear[] or cut[] out marked articles or advertisements from newspapers and magazines, using knife or scissors. Record[] name of publication, page and location, date, and name of customer on label, and affixes label to clipping." (DOT No. 249.587-014). A number of courts have found this occupation to be obsolete. *See*, *e.g.*, *Angela M. v. Comm'r SSA*, No. 3:18-cv-02133-YY, 2019 WL 6729317, at *11 (D. Or. Dec. 11, 2019); *Candice E. v. Berryhill*, No. 6:18-cv-01261-YY, 2019 WL 2550318, at *4 (D. Or. June 20, 2019); *Read v. Commissioner*, No. GJH-15-2684, 2016 WL 2610117, at *4-5 (D. Md. May 6, 2016) (discussing the shortcomings of the DOT and describing the job of paster as "patently obsolete."); *Scott v. Colvin*, No. 14-cv-04051-EDL, 2015 WL 11438598, at *13 (N.D. Cal. Dec. 9, 2015) (taking judicial notice that since 1991 the use of computers has become increasingly common in the work environment, likely reducing the need for the physical [cutter/paster job]); *Kane v. Colvin*, No. 2:13-CV-00131-JEM, 2014 WL 4829622, at *10 (N.D. Ind. Sept. 29, 2014) (expressing doubt about the continued existence of the paster job due to the shift to online publications).

The job of stuffer has likewise been found to be obsolete. The DOT defines a stuffer as a worker who "tends machines that blows filler into stuffed-toy shells." (DOT No. 731.685-014). In *Burney v. Berryhill*, 276 F.Supp.3d 496, 500-01 (2017), the court found that the job of stuffer was obsolete based on vocational testimony that there were 3,100 such jobs nationally and 100 jobs in North Carolina. The Court noted that while the Fourth Circuit has not decided what minimum number of jobs are necessary to constitute a "significant number," other courts have held that jobs that are "rare" or "generally unavailable" cannot be held to exist in significant numbers. *Id*. at 501. In reversing the ALJ's decision, the court concluded that the vocational testimony "was based on outdated and unreliable information, and these are positions [election clerk, addresser, and stuffer] that, even if properly considered, are not widely available." *Id*. One year after the *Burney* case, the vocational witness in this case testified that there were 354,410 stuffer positions nationally. There was no testimony as to the number of stuffer jobs in North Carolina. The court finds it extremely hard to believe that the number of stuffer positions increased that dramatically over the course of a year's time.

In *Chinn v. Berryhill*, No. 4:18-CV-00054-HBB, 2019 WL 1173374, at *9 (W.D. Ky. May 13, 2019), the court remanded to the Commissioner to reconsider whether the position of stuffer (among others) as performed in the modern economy was available to the claimant. The court noted that the DOT description of a stuffer has not been updated since 1977 and that "[t]he discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence." *Id*.

The last job identified in the ALJ's decision is that of a sorter. The DOT defines this job as follows: "Removes defective nuts and foreign matter from bulk nut meats: Observes nut meats on

conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers." (DOT No. 521.687-086). In *Coulter v. Colvin*, No. 1:13-CV-00011-LLK, 2013 WL 3992445, at * 2 (W.D. Ky. Aug. 2, 2013), the court remanded for further proceedings because the DOT description of sorter, among other occupations, appeared to be obsolete. As the court in *Moore v. Berryhill*, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *3, (W.D. Ky. May 11, 2018) noted, given that the DOT was last updated in 1991, "[I]t is impossible not to know that the occupational landscape in the United States has been dramatically and permanently transformed since then by the proliferation of automation, computers, and the internet," and that "common sense suggested that the occupations of mail clerk, sorter, and small products assembler may well be much different than they were when the DOT last undated those job descriptions, 29, 35, and nearly 37 years ago, respectively." (citation omitted).

Even if the job of sorter were not obsolete, the court questions whether the Plaintiff would be able to perform such work, as it appears that the position is assembly-line work. The ALJ's RFC limits Plaintiff to work at a non-production rate. The sorter job description specifically states that such work is done on a conveyer belt, which by its very nature requires a worker to proceed at the pace that the conveyer belt moves. *See Candice E.*, 2019 WL 2550318, at *3.

The Court concludes that there is "sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination was not supported by substantial evidence." *Chinn*, 2019 WL 1173374, at * 9. The Court therefore remands to the Commissioner for reconsideration of whether the DOT listings for these three jobs as performed in the modern economy are reliable. Because the Court is remanding based upon the

ALJ's step five determination, the Court finds it unnecessary to address Plaintiff's first assignment of error.

E. **Conclusion**

Based upon the foregoing, the Court finds that the decision of the ALJ is not supported by substantial evidence. Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be vacated and remanded for a new hearing and decision not inconsistent with this Order.

**IT IS THEREFORE ORDERED** that

(1) Plaintiff's Motion for Summary Judgment is **GRANTED**, and the Commissioner's Motion for Summary Judgment is **DENIED**;

(2) The decision of the Commissioner, denying the relief sought by Plaintiff, is **VACATED** and this action is **REMANDED** to the Commissioner for a new hearing and decision not inconsistent with this Order; and

(3) This action is **DISMISSED**.

Signed: May 3, 2021

Graham C. Mullen
United States District Judge